IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | | |
|---|---|---|
| FOUR SEASONS MARINA RENTALS, INC., | ) ) ) | |
| Plaintiff, | ) ) | Case No. 08-4221-CV-C-NKL |
| vs. | ) ) | |
| CITY OF OSAGE BEACH, MO, *et al.*, | ) ) | |
| Defendants. | ) ) ) | |

O R D E R

Plaintiff Four Seasons Marina Rentals, Inc. ("Four Seasons"), originally brought this action in the Circuit Court of Camden County, Missouri, for a declaratory judgment and an injunction against Defendants City of Osage Beach, Missouri ("Osage Beach"), JQH-Lake of the Ozarks Development, LLC ("JQH"), and JKH-Lake of the Ozarks Development, LLC ("JKH") (collectively "Defendants"), challenging an ordinance passed by Osage Beach pursuant to Missouri's Real Property Tax Increment Allocation Redevelopment Act ("TIF Act"), Mo. Rev. Stat. §§ 99.800 *et seq.* Four Seasons seeks a declaration that Osage Beach's finding of "blight" under the TIF Act was erroneous, that Osage Beach's adoption of a Tax Increment Financing Redevelopment Plan ("TIF Plan") was void, that enforcement of Missouri's TIF Act would deprive Four Seasons of its rights under the United States Constitution and the Missouri Constitution, and further requests an injunction prohibiting Defendants from implementing the TIF Plan. Defendants removed the case to this Court on

1

September 5, 2008. Pending before the Court is Plaintiff's Second Motion to Remand [Doc. # 95]. Because this Court lacks standing to consider Plaintiff's claims, Plaintiff's Motion is granted and this case is remanded to the Circuit Court of Camden County, Missouri.

**I.     Discussion**

In order to have standing to assert a claim in federal court, there must be a "case or controversy under Article III of the United States Constitution. *See Hodak v. City of St. Peters*, 535 F.3d 899, 903 (8th Cir. 2008) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). Standing generally requires three elements: (1) an " an actual or imminent concrete and particularized invasion to a legally protected interest;" (2) "the injury must be fairly traceable to the challenged action of the defendant;" and (3) "the injury must be redressable" by the Court. *Id.*

These three elements are considered the minimal constitutional requirements for standing, however, the U.S. Supreme Court has imposed additional prudential standing limits on federal courts' jurisdiction. *Id.* at 903-904 (citing *Ben Oehrleins & Sons & Daughter, Inc. v. Hennepin County*, 115 F.3d 1372, 1378 (8th Cir. 1997)). One of those prudential limits is that, "[a]s a general rule, a plaintiff may only assert his own injury in fact and 'cannot rest his claim to relief on the legal rights or interests of third parties.'" *Id.* at 904 (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)).

In this case, Plaintiff alleges that it has suffered injury by virtue of its status as a taxpayer of Camden County, Missouri, in that the implementation of the TIF by the Defendants will affect Camden County tax revenues. A plaintiff's status as a federal or state

taxpayer generally does not give a plaintiff standing to challenge federal or state actions in federal court. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 342–347 (2006). As the Supreme Court first explained in 1923 in *Frothingham v. Mellon*:

> [a federal taxpayer's] interest in the moneys of the Treasury-partly realized from taxation and partly from other sources-is shared with millions of others; is comparatively minute and indeterminable; and the effect upon future taxation, of any payment out of the funds, so remote, fluctuating and uncertain, that no basis is afforded for an appeal to the preventive powers of a court of equity.

262 U.S. 447, 487 (1923). The Supreme Court further explained in *DaimlerChrysler v. Cuno* that federal and state taxpayers lack standing as taxpayers to challenge taxing and spending decisions of their governments because their alleged injuries are not sufficiently "concrete and particularized," but rather are grievances these taxpayers would have in common with the general public. *Id.* at 344. The Supreme Court stated that in cases where a tax expenditure[1] is challenged, the injury is not "actual or imminent," but rather "conjectural or hypothetical," because the injury depends upon how legislators respond to reductions in revenue – for there to be an injury the a federal court would have to assume that legislators would respond to the reduction in revenue by increasing the plaintiff's tax rate to make up for the tax expenditure – and because it is unclear whether tax breaks designed to spur economic activity would result in more or less tax revenues to the taxing entity. *Id.* The

---

[1] A "tax expenditure" is a reduction in the amount available to a taxing entity that results from the granting of a tax credit or exemption with respect to taxes to be paid to that entity. *DaimlerChrysler Corp.*, 547 U.S. at 343-44. The Supreme Court in *DamilerChrysler Corp.* noted that its analysis of a federal or state taxpayer's standing to sue its government over "expenditure that deplete the [government's] treasury" was "equally applicable" to taxpayer challenges to "tax expenditures." *Id.*

3

Supreme Court further stated that, by the same logic, whether a federal court could redress such an injury would be conjectural, because the plaintiff would have no right to force the federal or state government to reduce the plaintiff's taxes if the Court found a tax expenditure to be unlawful. *Id.* at 344-45.

When the *Frothingham* Court decided that federal taxpayers per se did not have standing to challenge federal taxing and spending decisions, it noted with approval prior decisions allowing "resident taxpayers [to] sue to enjoin an illegal use of the moneys of a municipal corporation." *Frothingham*, 262 U.S. at 486 (citing *Bradfield v. Roberts*, 175 U.S. 291, 295 (1899); *Crampton v. Zabriskie*, 101 U.S. 601, 609 (1879)). The Supreme Court distinguished the interest of municipal from federal taxpayer litigants, stating that "[t]he interest of a taxpayer of a municipality in the application of its moneys is direct and immediate and the remedy by injunction to prevent their misuse is not inappropriate." *Id.* The *Frothingham* Court further stated:

> [t]he reasons which support the extension of the equitable remedy to a single taxpayer in such cases are based upon the peculiar relation of the corporate taxpayer to the corporation, which is not without some resemblance to that subsisting between stockholder and private corporation.

*Id.* at 487 (internal citation omitted).

The Supreme Court in *Crampton v. Zabriskie* explained why the Court had allowed municipal taxpayer suits. 101 U.S. at 609. In that case, plaintiff taxpayers of Hudson County, New Jersey sued to compel the County's Board of Freeholders to reconvey land it

had received in return for bonds the County lacked authority to issue. *Id.* at 607-609. The Supreme Court noted:

> [o]f the right of resident tax-payers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of the county or the illegal creation of a debt which they in common with other property-holders of the county may otherwise be compelled to pay, there is at this day no serious question. The right has been recognized by the State courts in numerous cases; and from the nature of the powers exercised by municipal corporations, the great danger of their abuse and the necessity of prompt action to prevent irremediable injuries, it would seem eminently proper for courts of equity to interfere upon the application of the tax-payers of a county to prevent the consummation of a wrong, when the officers of those corporations assume, in excess of their powers, to create burdens upon property-holders.

*Id.* at 609. Thus, the Supreme Court's discussion of the "peculiar relation" between municipal taxpayers and their municipalities as a basis for distinguishing municipal taxpayer standing from federal taxpayer standing cases in *Frothingham* must be interpreted in the light of the above discussion in *Crampton*; the "peculiar relation" is important because of the danger that municipal officials will abuse their powers in ways that deplete the municipal fisc. In such cases, if the municipal taxpayers themselves could not challenge the municipality's illegal action, there might not be any other remedy. Federal courts have cited this reasoning from *Frothingham* and *Crampton* in support of the proposition that the local government where the taxpayer lives must be the named defendant before local taxpayer standing applies. *See Warnock v. National Football League*, 356 F.Supp.2d 535, 541 (W.D. Pa. 2005), *aff'd,* 154 Fed. Appx. 291 (3d Cir. 2005), *cert. denied*, 547 U.S. 1021 (2006); *Bd. of Educ. of Mt. Sinai Union Free Sch. Dist. v. New York State Teachers Retirement Sys.*, 60 F.3d 106, 111 (2d Cir. 1995) (rejecting plaintiffs' theory that "whether a taxpayer has standing [should] turn not on

5

the governmental unit whose act is challenged, but . . . on the governmental unit whose funds were affected by the challenged action.").

In the *Mt. Sinai* case, the Second Circuit Court of Appeals found that where a municipal taxpayer plaintiff's challenge was directed at state action rather than its municipality's action, municipal taxpayer standing did not apply and the plaintiff lacked standing. *Bd. of Educ. of Mt. Sinai Union Free Sch. Dist.*, 60 F.3d at 111. Plaintiffs in that case, taxpayers of the Mt. Sinai School District, challenged the State of New York's action in enacting a statutory provision that required their school districts to begin to make payments to the state's teacher retirement system for the benefit of certain teachers who had previously paid into other state pension funds and who had not been eligible to participate in the teacher retirement system. *Id.* at 108-109. The passage of a state law required the school districts to expend sums of money they did not have to expend prior to its enactment. *Id.* Plaintiffs challenged the law's constitutionality and sued the state official who implemented it. *Id.*

Plaintiffs claimed municipal taxpayer standing, arguing that "they [were] being injured by [the] unlawful expenditure of municipal funds, and they therefore ha[d] standing as municipal taxpayers." *Id.* at 111. Plaintiffs argued – like Defendants in this case – that "whether a taxpayer has standing [should] turn not on the governmental unit whose action is challenged, but simply on the governmental unit whose funds were affected by the challenged action." *Id.* The Second Circuit rejected this argument, stating that it "believe[d] that such a rule [was] not supported by the cases establishing taxpayer standing," and declined to "extend the availability of municipal taxpayer standing to actions where a municipal taxpayer

6

challenges an expenditure of municipal funds mandated by state law." *Id.* The Court stated that "one of the central premises of municipal taxpayer standing [was] that the taxpayer's suit be brought against a municipality," and that the plaintiffs were not relying on a "peculiar relation" with a municipality, which was the basis for the distinction between federal and municipal taxpayer standing cases made in *Frothingham*. *Id.*

The *Mt. Sinai* case would indicate that Plaintiff in this case does not have standing under the municipal taxpayer standing doctrine. While the plaintiffs in *Mt. Sinai* were suing a state entity rather than a municipal entity and Plaintiff here is suing the City of Osage Beach, both were suing another governmental actor for causing a direct depletion of funds to a local government to which the plaintiff paid taxes. In *Mt. Sinai*, the state retirement system was, pursuant to New York law, forcing school districts to pay out sums of money. Similarly, in this case, the City of Osage Beach has enacted an ordinance pursuant to Missouri law, that results in reduced property taxes to Camden County, Missouri. The one difference is that the government the *Mt. Sinai* plaintiffs were suing for depleting their municipality's funds was their state, whereas here Plaintiff is suing another municipality for doing the same thing. While Plaintiff has brought its claim against *a* municipality, the City of Osage Beach, like the plaintiffs in *Mt. Sinai*, it lacks the "peculiar relation" to the municipality it sued which was the basis for the distinction between federal and municipal taxpayer standing discussed in *Frothingham*.

Further, the language used in the Supreme Court's decision in *DaimlerCrysler Corp* strongly implies that municipal taxpayer standing is not available to a plaintiff who sues an

7

entity other than the local government to which it pays taxes. 547 U.S. 332 (2006). In that case, the plaintiffs were taxpayers of the City of Toledo challenging an Ohio state franchise tax exemption. *Id.* at 349. The Supreme Court noted that the plaintiffs "identif[ied] no municipal action contributing to any claimed injury, [but rather tried] to leverage the notion of municipal taxpayer standing beyond challenges to municipal action[.]" *Id.* Plaintiffs stated that "because state law require[d] revenues from the franchise tax to be distributed to local governments . . . the award of a credit to DaimlerChrysler reduced such distributions and thus depleted the funds of local governments to which [they] pa[id] taxes." *Id.* (internal quotation omitted). The Supreme Court noted that "plaintiffs' challenge [was] still to the state law and state decision, not those of *their* municipality." *Id.* at 349-50 (emphasis added). While the facts of *DaimlerChrysler Corp.* are arguably distinguishable from the facts in this case in that Plaintiff's challenge here relates to a credit against the taxes of Camden County rather than the State of Missouri, the Supreme Court's statement that the plaintiffs in *Cumo* were attacking a state law or decision, rather than a decision of "*their* municipality" at least implies that municipal taxpayer standing is only available where the plaintiff is suing its own municipality.

Finally, while this is not a classic case of third-party standing, since Plaintiff does not purport to bring its claims on behalf of Camden County, the principles underlying the Supreme Court's prudential rule against federal jurisdiction where a plaintiff asserts the rights of a party not before the court weigh against extending the municipal taxpayer standing doctrine to cover cases like this one. The Supreme Court has explained that one of the reasons

8

behind the prudential rule against third-party standing is that courts should avoid adjudicating the rights of parties who may not wish to assert those rights, and that prohibiting third-party standing will generally improve the quality of litigation and judicial decision-making in that the most effective advocates of the rights at issue will be present to advocate for them. *Duke Power Co. v. Carolina Envt'l Study Group*, 438 U.S. 59, 80 (1978) (internal citations omitted). Here, there is no indication that Camden County wishes to attack the Defendants' implementation of the TIF in order to preserve its tax base, and no indication that Camden County could not assert its rights itself if it chose to do so. The pragmatic reasons discussed in *Crampton* are simply not present here.

In this case, Plaintiff has suffered injury, if any, merely by virtue of its status as a taxpayer of Camden County, Missouri, in that the implementation of the TIF by Defendants other than Camden County, Missouri will limit Camden County's ability to assess certain property taxes because of the TIF. As the Supreme Court found in *DaimlerChrysler Corp.*, the injury alleged by Plaintiff in this case is not "actual or imminent" but rather is "conjectural or hypothetical," because it depends upon how county officials will respond to the alleged reduction in revenue (for injury to the Plaintiff, officials would have to decide to offset the reduction in revenue by increasing Plaintiff's tax burden), and because it is unclear whether the tax increment financing, which is designed to spur economic activity, would actually result in decreased tax revenues to Camden County. 547 U.S. at 344.

Furthermore, as set out above, Plaintiff's case does not fall within the municipal taxpayer standing doctrine because it is not suing its own government - Camden County - but

9

instead is suing a sister local governmental entity to which it pays no taxes and to which it has no "peculiar relation". Thus, this Court lacks standing in this case, and must remand to the Circuit Court of Camden County, Missouri.

**II.     Conclusion**

Accordingly, it is hereby

ORDERED that Plaintiff's Second Motion For Remand To State Court [Doc. # 95] is GRANTED. It is further

ORDERED that this case is REMANDED to the Circuit Court of Camden County, Missouri.

s/ NANETTE K. LAUGHREY
NANETTE K. LAUGHREY
United States District Judge

Dated: June 3, 2009
Jefferson City, Missouri